We'll hear 23-6054 Speech First v. Shrum Mr. Norris Thank you, your honors. I'd like to reserve three minutes for a moment. We'll see how that goes. No circuit has ever held that an association lacks standing simply because it referred to its members with pseudonyms. Embracing that argument would split directly with the D.C. Circuit. It would ignore that a key purpose of associational standing, going all the way back to its genesis in NAACP v. Patterson, is that people can litigate together while protecting their individual privacy. And it would contradict the many cases where associations have used pseudonyms. The NAACP used them in the DACA case. SFFA used them in the Harvard case. And the ACLU supports us here because it uses them all the time.  And it should reject my friend's position, which mushes together standing cases that don't involve pseudonyms with pseudonym cases that don't involve standing. Was this a facial challenge? Yes. It was a facial challenge. Yes. So there was no jurisdictional discovery. Correct. If it had been a factual challenge, and the university had asked for jurisdictional discovery, said, you put these people in here, and we don't believe they're real. And in order to know if there's an injury, we need to know if they exist. Under those circumstances, would you have had to produce the names, the real names? I don't think so. I think we would have had several arguments. We would have said this is a mere preliminary injunction where declarations are sufficient to prove standing. There's no reason to doubt the truth of our declarations. They're under oath. There's a verified complaint that's signed by our director. There's a declaration from our director. There's declarations from the students. We would have said that's not necessary. But it is interesting that they didn't even ask. My friend has complaints. He says, how could we possibly resist your standing without this information? Well, one, they didn't even try to get it. And two, they did resist it. They have a very long brief in the district court, and half of their brief in this court, about standing arguments that have nothing to do with the first and last names of any individual member. It's not relevant to standing, which is what the DC Circuit said in the highway safety case. How does using a pseudonym on an affidavit work? Well, can someone be prosecuted for perjury when they didn't use the real name? Yeah, so what the courts have said about that is you can do it this way if there's some way to identify who that person is, if there is an instance where you think the testimony is false. And that's the case. Our executive director also submitted a declaration. She knows these students. She, if forced, could identify these students for the court to assuage any perjury-type concerns. Are they entitled to less weight? They could be. That's an argument the university could have made. They didn't. And I don't think the mere fact that there are students at the university is pretty non-controversial. And what the Fourth Circuit said in the BR case that we cite in our brief is that one check against this, of course, is the ethical obligations that attorneys have to tell courts to not make things up to the court. That's the backstop of the pleading stage early in the case. Now, of course, discovery, when we get into discovery, will be a way that they can request any lingering doubts they have. They can request information. You can have discovery fights then. The three-judge district court in the South Carolina NAACP case said, this is a discovery fight. It is not a question of Article III standing. That is something you have to include in the complaint to avoid a motion to dismiss. And that's really the district court's error is its reading of Summers. Summers is not even a case where an association used pseudonyms. The district court read Summers that the fact that it uses the word name and said, that must be a ban on using pseudonyms. It must mean real name or legal name. Summers doesn't say that. It doesn't actually even involve pseudonyms at all, as I mentioned. And none of the reasoning in Summers would have made any sense in a case like ours, where the association came forward with a specific member and said, this is member A. Member A wants to visit this particular site. They're worried that the forest project will ruin this particular site. They bought their plane ticket. They're going to go there. And all they withheld is the first and last name. That had been the facts of Summers. Nothing the court said would have made any sense. It would be no question of probabilistic standing, which is a big part of the Summers case. The court said that there is no individual here who has concrete plans to visit any particular area. That would not have made any sense if they had done what we did here. And since the district court's decision here, we cited several cases of 28J letters, where associations, who my law firm represents several of, have done the same thing that we did in the district court here. It happened in the Students for Fair Admissions case that was decided at the Supreme Court, the Fearless Fund case, the Chamber of Commerce case. This is routine. I am not familiar with a single case where a district court has said, as an association, if your members are pseudonymous, you have to come forward and get my permission before you can proceed with the case. There seems to be something in the briefing that suggests the university is disavowing enforcement of these challenged policies. Is that a correct reading of the briefs? I don't think so, Your Honor. I think what they're saying is, with the harassment policy in particular, is that if it's harassment, it is not speech. They're reading their policy. It's not including anything that's protected by the First Amendment. That's a dispute that we have with them on the merits. We think it does reach speech. And the question is whether it arguably reaches speech for purposes of standing. And it's a debate that we've won in the Fifth Circuit and the Eleventh Circuit and the Southern District of Texas over virtually identical policies. And we actually included those policies, the ones that we challenged in those cases, in the amendments. And the computer policy, is that moot? Not at all, Your Honor. So we checked the website this morning. The policy that we challenged is still there. So I think students, at the very least, have conflicting messages from the university right now. But let's just assume they got rid of it entirely. That's a question of voluntary cessation. They did that after we sued them. And so they have a heavy burden of proving mootness that way. And the Sixth Circuit decision of the Golden case that we cite is pretty good on this. It says, the burden is on the defendant, and you can't carry that burden if you make no arguments, cite no cases, introduce no evidence. So I think this is a question for the district court. And on remand, we'll have to have this voluntary cessation dispute with them. They'll probably build forward some evidence about whether they've changed the policy and whether they'll ever go back to the old policy. And for that reason, because I think this case has to go back anyway on the computer policy, we ask the court to just simply resolve the anonymity question that the district court ruled on and send everything else back for initial factual findings and development on the motion to dismiss as well as the preliminary injunction motion. If there are no further questions, I'll reserve my time. Thank you. Thank you. Mr. Stevens? May it please the court, counsel? Steve Stevens, representing Dr. Casey Shrum in a representative capacity as the president of Oakland State University. We believe there are two standing issues before the court. The first is the naming issue that arises from Summers. The second is the issue that the general officer is addressing. It's whether we can take a look at the standing issues that have happened in the other cases, like Killeen and in Sands, where the challenge policies, there's no credible threat of enforcement and the students haven't been harmed and the students themselves can show they don't have a standing. But with respect to the naming issue, we didn't have the correct interpretation of Summers. Summers says if you're an associational plaintiff, you've got to name a member. My friend says they didn't mean name them and identify, as if there's some difference. You do have to read opinions in context, don't you? You certainly do. And was there any anonymity issue in Summers? With respect, not in Summers, but in some of the other cases there have been. And what the issue is, is when you talk about identifying, they use these terms in the case. They use them, in my view, as synonymous terms. I represent Dr. Casey Shrum. I represent the president of Oakland State University. Either way that I identify her, by her name or I identify her by her title, you know with specificity who she is. In the cases there are a lot of- It's risking a lot of us as judges to be thinking of every, when we write an opinion into context, we're not thinking of every possibility. Maybe we should, maybe we fail in that regard. It would be nice if Justice Scalia had mentioned this particular issue. But the issue there is whether you can just say there's a high probability or a probability that one of our members will be there, or whether we actually know some member who will be there. And that was what was going on in Summers. I understand the opinion. And anonymity was not an issue. So I'd be careful about reading too much into it. Well, the Ninth Circuit case, we've cited to you the other cases relying on Summers that have said you must name a member to obtain associational standing. And I think the best analysis that I've seen, if you talk about one, the First Circuit says you have to use specific facts to identify somebody. The best that I think I've seen is the D.C. Circuit, excuse me, the D.C. District Court's case, holding in the Pharmaceutical Manufacturing of Becerra case, talks that all courts, including this court, have an individual obligation to determine whether you have standing, determine whether you have jurisdiction. It says with respect to associational plaintiffs, they have to identify a member. You don't have to name them, but they have to identify them with such specificity through either the complaint or the attached exhibits and other attendant materials that you know who that person is. And that's failing here. And counsel wants to say, well... Does it depend on the stage of the proceeding? That's exactly what I was getting ready to go over. Counsel says you have to take a look and say, this is a motion to dismiss. Motion to dismiss and it applies. Well, let's take a look at this case in context. They didn't simply file a complaint to which we filed a 12B6 motion. You take all the allegations and complaints as if they're true. That's not what happened here. They filed a complaint coupled with a motion for preliminary injunction. They do that in all of these cases. So what's immediately teed up at that point is the preliminary injunction proceeding. What we did, we didn't just test it. In all the other cases, what people did, they went ahead and they responded to the preliminary injunction and had a small portion of their briefing addressing the critical standing issue. We thought that was inadequate. We had a way by using 12B1 to raise the standing issue and respond to the motion for preliminary injunction and did it at the exact same time. Your 12B1 challenge was a facial challenge. Well, with respect to the naming issue, it's a facial challenge. But because of the unique circumstances that are coupled together, all the materials that are before the court and before this court in the record, it is both a facial and a factual challenge. Because you have to take a look at what was before the court. We said in our moving papers, we said, Your Honor, before you is our 12B1 motion and the response to the request for preliminary injunction, we think you have to take a look at the 12B1 motion first. And the court did that. Counsel, my friend, said the exact opposite, said, No, you don't need to do that. You need to look at the preliminary injunction. The court did as we suggested, which I think was the right way to look at it. And so I think if you're looking at the unique circumstances of this case, you need to take a look at it at the preliminary injunction stage. And I believe they're correct showing there's a clear showing of standing. And there has been no clear showing of standing. Because of that, let's take a look at the motion to dismiss if you just allow that to be the only standard. Let me ask you a question before you move on to that. What exactly is the information that the legal name gets you that bears on the injury component of standing? Why do you need that in order to assess that particular element? Or maybe you think it goes to a different element. Well, if you take a look at what happens here, if you take all the allegations that they say, we have our First Amendment rights have been shielded, we can't go out and express our conservative views on this campus, although it happens every day, happened yesterday, twice, but anyway, they say you can't. If we knew who they were, the way that students really communicate on a college campus is through social media. If I knew who they were, I could do just a little bit of due diligence. It wouldn't take me long to see, are these affidavits that seem so canned in all these cases? They seem to be wrote, cut and paste. So is it because you don't think they're real students? What I think is if I were given the opportunity, one, a Senate could think that. But if I were given the opportunity to see through social media, I could determine whether or not the declarations that were put in front of me that they signed really portray what happens to them actually, because the social media would say, no, they're clearly broadcasting their views all across campus to all their friends all the time. I would have that opportunity in responding to the preliminary injunction motion. Without that, I don't know what to do. The point I would also like for the court to consider is the public policy that comes here. The Seventh Circuit said, if you just look at a motion to dismiss standard, what happens is every plaintiff just gets to ledge their way up to, all the way to discovery to a summary judgment stage. So here, here's what would happen in this particular case. It has happened in these particular cases. If you come in and you're coupling, you're filing a complaint with a request for a preliminary injunction, and you say, just a motion to dismiss standard, we're going to have to address that later, the relief they're requesting is injunctive relief. What happens is they would be allowed to go directly to the preliminary injunction, get the relief they're really requesting. And in cases like this, unless you're using in-house counsel like this, they're very expensive to defend. What's going to happen is you're going to need strong arm into that preliminary injunction determination becoming a settlement, and you never have the chance to know whether or not there was actual standing. So what you can have is a situation that happens where somebody, based on a declaration, that is cross-examined, that would have been challenged, wouldn't hold up. But based on that, preliminary injunction issues, the issue is settled. You don't get to, you're not entitled to a preliminary injunction because you have standing to seek a preliminary injunction. There's still proceedings on the merits. And what you're saying is you'd like their names, and with that I could better defend against the substance of the preliminary injunction. That's a different issue from standing, isn't it? No. Well, they're coupled, and here's how they're coupled. At the preliminary injunction hearing, there still is evidence. The quantum of evidence. I mean, you can use declarations in a way you couldn't use if you were in another type of hearing. But I'm precluded from being able to challenge the sufficiency of that declaration because I don't know the social media. I don't know the identity. I can't go in and determine, do I have a way to really challenge this? Well, that was the issue that was brought up with opposing counsel, that the fact that it's anonymous can diminish the probative value of it, and the judge could consider that in determining whether or not to grant a preliminary injunction. But that's another step in the process. Go ahead. If you were this old trial lawyer, there's something of a difference between saying, you don't have to give that as much weight because it's just a declaration optional under oath, versus compare that declaration that says I'm chilled and can't do this on campus, versus this social media account that's this student's that shows that what's in that declaration is simply not true. But I thought your argument, and if I'm misunderstanding it, please tell me, but I thought your argument under 12b-1 was that the allegations on standing were insufficient as a matter of law under Summers, period. That that was your argument. That's the issue on appeal. That's it. There are. With respect to the naming issue, the standing issue, that's correct, Judge Rossman. But what we also had was a second issue, that's the standing issue that comes forward, that's looked at in Colleen and in Sands, where they go through and they take a look to determine, and the district court didn't do this. Right. So I understand there's these two components, but if let's say you don't prevail on the first part, you are asking us to consider the second part, the factual challenges? Yes, Your Honor, because I was trying to think of this in judicially economic terms. If you didn't go with this in the naming issue, the second standing issue was not determined by the district court because it relied on Summers and the way we asked it to. So what we could have, and the court could, if you want to, remand it back to Judge Jones, and he'd have come back, and I believe he would find, follow Colleen, I think he'd follow Sands, and he would have determined that there is no standing individual students can't show harm coming from the challenge policy. Could you seek jurisdictional discovery on harm on remand? Because you're contesting, you don't think these students are still enrolled, are real, you can't defend, whatever it is. Would you be able to do that? We would, I think, based upon what I've heard counsel say they've contested, and we have a fine with respect to that. But if we, I think there's sufficient evidence before the court, it's the same type of evidence that was before the court in Colleen and in Sands, that would allow this court to make the determination, if it wants to. You also have the opportunity, should you decide to do so, to remand it to the district court for that determination. But I think that the court could make that determination on its own, and we'd avoid that step down and step back up before this court again here in a few months. The other issue that I wanted to address, and counsel gets this, is that there's a huge difference between pseudonymity and anonymity. Pseudonymity is a form of anonymity. It's not guaranteed by the Constitution, not established by statute, or even a procedural rule in this circuit. It's created by the courts. So I think the courts should focus on what's the best public policy with respect to that issue. There are some issues where it is absolutely appropriate to proceed using pseudonym. This isn't such a case. There's no personal health information in here. There's nothing particularly scurrilous about this. There's nothing that's going to implicate you in a crime. There's nothing like that, which is all the typical uses of pseudonymity. You don't think that these students might not want to advertise that they are suing the university that they attend? Your Honor, what they're saying is what we want to do is we want to publicly express our First Amendment and our conservative viewpoints. It's so incongruous to me that you're saying I don't want I don't want anybody to know that I'm behind a lawsuit where I'm trying to express those conservative viewpoints. That's exactly what they want to do. They exactly want to do, which, by the way, I'd be remiss if I didn't say this, Oklahoma State protects everybody's First Amendment rights on that campus assiduously. We do. And it happens with conservative students all the time. Like I said, there were two, a protest, another, and a preacher on campus yesterday doing exactly that. It happens routinely. I think there's a significant distinction between exercising your First Amendment rights in the way that these students would like to do and being affiliated with litigation to secure those rights. Your Honor, I think that's a de minimis distinction. I really do. It certainly wouldn't be on our campus. I mean, this is, you know, the way we look at things is we don't look at lawsuits as World War III. It's dispute resolution. That's the way I've done it my whole life. I think it's a proper analysis of it. That's a civil way to approach litigation, in my opinion. What is this? I'm confused anyway as to what all your policy discussion has to do with standing. I mean, we do what we do. We apply the law we apply. I don't see any place in there where we would discuss policy reasons behind allowing pseudonyms or not allowing them. Well, it's just, in counsel, there's a strong distinction between pseudonymity and anonymity that I frankly, I don't follow. I think that pseudonymity is just simply a form of anonymity. And the best policy if you want to proceed in the district court is by putting together a motion and asking the court, that way you have something to enforce if I violate it or somebody violates it. And you have the parties know what is expected of them. Okay. It's my seat and I'm out of time. I'd be happy to respond to any questions you have. But I urge the court, based on the arguments today and the briefing, to affirm the district court. Thank you, counsel. Thank you. Mr. Norris, I think you have a few minutes here. Thank you, Your Honor. Just a few points. My friend said some of the other cases that apply Summers involve pseudonyms. He means one of the other cases. That's the Dudo-Harm case out of the Southern District of New York. I argued that case last month. It's currently on appeal to the Second Circuit. And I don't tend to read too much into oral arguments, but I don't think this argument fared very well in that argument. The other cases, every other case that's cited by my friend is about Summers' actual holding, which is that associations at certain stages of litigation have to identify a specific member and prove that that specific member currently has standing. My friend does not even dispute that we did that here. And almost all of those cases occur at later stages of the litigation, like summary judgment, where discovery has happened and they've actually gotten the information about the people. Summers itself was an appeal from a trial. It was all the way to final judgment. If the university makes a case on remand that they need the legal names to defend against the preliminary injunction component of your case, what would you do? We would oppose jurisdictional discovery. They didn't seek it when they had the opportunity to. We would say that request is late. We would also say they don't need that. Preliminary injunctions are often decided quickly and on an entirely complete record. All five circuits where speech first has appealed, all five circuits had no problem assessing our standing based on a very similar record. And in fact, the Fourth Circuit overruled an objection to the anonymity of our members and found that we had standing to challenge one policy. And the reason that we submitted anonymous declarations to tell the truth is the Seventh Circuit faulted us for not doing that in the case. They actually said you should submit anonymous declarations on behalf of the members. And if you had, that would satisfy us that their speech is chilled. And so we had done that in this case and in other cases. Could you have submitted them in camera to the district court? I suppose we could have. The district court didn't request that. That is something that's been done in other cases. I think that's maybe an option if there's a genuine concern about the existence of our members. But as an officer of the court, these are students who are members of Speech First. Speech First directors score that. They are students at the university currently. The only reason, my friend, that said that's even remotely standing related that he might want this information is apparently so he can stalk their social media and find things that they've said to the public. I don't think that's even relevant to the issue of whether their speech is chilled on campus as a result of these policies. I just don't think that's the stuff of saying that we don't have standing because there's something the defendant maybe couldn't pursue. The time to do that, as several courts have said, is discovery, not early on in a case like this. My friend said there should be a higher standard because we also sought a preliminary injunction. The D.C. Circuit in the Food and Water Watch case rejected this exact argument that says when you file a preliminary injunction along with your complaint, that is not somehow bringing you to the summary judgment stage. You're still at the pleading stage because no discovery has happened yet. It's still early in the case. I'm glad my friend conceded that his naming argument is a facial challenge so you just need to look to the complaint. You can also look to all of the circuit decisions that say when you're looking at the complaint, there is no requirement that you give the first and last name of your members in order to prove standing. So does that mean if we treat this as a facial challenge and so resolve it, what is your position on whether to address the factual challenges here or below? So my friend, I think, has characterized all of his other arguments as factual challenges in the brief. I've never heard of an appellate court resolving a factual challenge for the first time on appeal. I think the proper thing to do would be to send that back. Let the district court make factual findings and then you review for clear error not to do it yourself for the first time. But we don't think any of this matters. We think we satisfy the preliminary injunctions standard, the motion to dismiss standard, the summary judgment standard. We didn't come forward with just a complaint. We have a verified complaint. We have a declaration from our director. We have hundreds of pages of exhibits. We have declarations from our members. We have more than sufficient evidence. It's not rebutted at this stage. And this is the type of evidence that we want a preliminary injunction in the 11th Circuit on. It's not rebutted, but there hasn't been any evaluation of it. That's right. And I think that's so clearly a question for the district court if it truly is a factual challenge. We dispute whether this is a proper factual challenge, but that, too, is something that could be resolved in the district court. Thank you. Thank you, counsel. Case is submitted. Counsel are excused.